*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *DONNA QUIMBY,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 07-128-B-W* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

*REPORT AND RECOMMENDED DECISION*[1]

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal the plaintiff contends that the administrative law judge failed to properly analyze her chronic pain, erred in relying on the Medical-Vocational Guidelines, erred in finding that her sleep disorder was not severe, and assigned her a residual functional capacity that was not supported by substantial evidence in the record. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from the severe impairment of fibromyalgia with back, leg, hip and shoulder pain, an impairment that did not meet or equal the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"),

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c). The commissioner had admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on (*continued on next page*)

Findings 3-4, Record at 18; that the plaintiff's allegations of pain, emotional distress and other limitations were not credible "to the extent of establishing an inability to work," Finding 5, *id*.; that she retained the physical residual functional capacity to perform unskilled and semiskilled sedentary work, Finding 6, *id*.; that she was unable to perform her past relevant work, Finding 7, *id*.; that application of Rules 201.28 and 201.21 of Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid"), demonstrated that there were unskilled and semiskilled sedentary jobs existing in sufficient numbers in the national economy that the plaintiff could perform, Finding 8, *id*.; and that the plaintiff accordingly had not been under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, Findings 8-9, *id*. The Appeals Council declined to review the decision, *id.* at 6-8, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of

---

February 29, 2008, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The appeal also implicates Step 2 of the sequential process, at which stage the plaintiff bears the burden of proof. However, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id*. at 1124 (quoting Social Security Ruling 85-28).

### Discussion

The plaintiff's first argument is that the administrative law judge erred in relying on the Grid because her pain caused non-exertional limitations that had more than a marginal effect on the available sedentary occupational base. Plaintiff's Itemized Statement of Error ("Itemized Statement") (Docket No. 9) at 2-7. In this case, the administrative law judge assessed the plaintiff's testimony about pain as follows:

> Careful consideration has been given to the claimant's complaints of pain and other restrictions that she asserts prevent her from working. See 20 CFR 404.1529 and 416.929, and Social Security Ruling 96-7p. While she consistently has complained of pain in various areas of her body, due primarily to fibromyalgia, the record does not demonstrate incapacitating limitations. Objective testing is largely unremarkable, with no neurological deficits, and a lumbar MRI showing only mild degenerative disk disease (Exhibit 9F, page 74). . . . It also is noteworthy that Dr. Curran stated that the claimant had "certain red flags such as not being interested in returning to work" (Exhibit 9F, page 20), ant there is no statement by any treating or examining doctor that the claimant's multiple symptoms and purported restrictions ever rendered her "disabled" or unable to work. For all of these reasons, the claimant's subjective complaints are not well supported by the

> medical evidence, and are not considered credible, as they exaggerate the
> severity of her functional restrictions, which are not incapacitating.

Record at 30.  It is significant as well that the administrative law judge assigned the plaintiff a physical capacity only for sedentary work, "[c]onsidering [her] documented hip and heel pains," *id*., even though the state-agency reviewers assessed her residual functional capacity at the light exertional level, *id*. at 174-81, 340-47.[2]

The plaintiff points out, Itemized Statement at 3, that the administrative law judge's emphasis on objective testing is misplaced in this case, where her primary diagnosis is fibromyalgia, a condition that is noteworthy for causing pain that cannot be tied to a specific physical cause, *see Stedman's Medical Dictionary* (27th ed. 2000) at 671 ("[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause").  However, the administrative law judge did find that the plaintiff suffered from fibromyalgia "with back, leg, hip and shoulder pains" as a severe impairment, Record at 31.  To say, as the plaintiff does, Itemized Statement at 3, that the administrative law judge "made no specific allowances for the Plaintiff's other impairments, including fibromyalgia," in reaching his decision on residual functional capacity is clearly incorrect.

However, as to the administrative law judge's analysis of the plaintiff's credibility, the plaintiff's argument is more fruitful.  The credibility finding must "contain specific reasons for the finding on credibility, supported by evidence in the case record, and . . . sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Social Security Ruling 96-7p ("SSR 96-7p"),

---

[2] The plaintiff complains that the administrative law judge "reject[ed] the DDS physicians' assessments and then [found] the plaintiff not to be credible and . . . pluck[ed] an RFC finding from the air."  Itemized Statement at 7.  She asserts that "having rejected the views of the DDS non-examining physicians, [the administrative law judge] simply fashioned a sedentary RFC out of whole cloth.  That he may not do[.]"  *Id.*  I doubt that a Social Security claimant may challenge an administrative law judge's choice of an RFC that is more favorable to her than one that would be supported by the record. Absent some other factor, she simply cannot be said to have been harmed by such an action.  In any event, the administrative law judge in this case did not "fashion a sedentary RFC out of whole cloth."  He stated how he arrived at that RFC, as he was required to do.  Record at 29-30.

reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2007) at 137.  That a claimant's treating medical professionals did not record that they ever told her that she could not work, a finding on which the administrative law judge relies, Record at 30,[3] is not a factor to be evaluated in assessing a claimant's credibility.  SSR 96-7p at 137-41.  In any event, whether a claimant is disabled is a judgment reserved to the commissioner in Social Security cases.  20 C.F.R. §§ 404.1527(e), 416.927(e).  In addition, the administrative law judge's assessment of the plaintiff's credibility in this case is devoid of any mention of the activities of daily living, the effects of any medications taken by the plaintiff or the location, duration, frequency and intensity of the pain, all of which are factors that should be considered in evaluating a claimant's credibility.  SSR 96-7p at 135, 137-38.  *See also Avery v. Secretary of Health & Human Servs.*, 797 F.2d 19, 29 (1st Cir. 1986).  The administrative law judge's discussion of the plaintiff's credibility is simply insufficient in this case.

In addition, the plaintiff points to the administrative law judge's failure to address her shoulder condition "detailed in Dr. Ajine's evaluation, and noted further by Dr. Hayes, the state agency consultant[.]"  Itemized Statement at 5.  Dr. Ajine diagnosed bilateral shoulder enthesopathy, Record at 184, and the state-agency RFC form completed by Dr. Hayes notes that the plaintiff "reports pain in her shoulders," *id*. at 345, and Dr. Ajine's report of "painful limited abduction of shoulders," *id*. at 347, and concludes that reaching in all directions is limited and directs "[n]o frequent overhead work," *id*. at 343.  The other state-agency reviewer does not mention Dr. Ajine's report and assigns no limitation on reaching or overhead work, *id*. at 174-81, but, given the plaintiff's testimony about shoulder pain, *id*. at 507, 508-09, the administrative law judge should have given his reasons for rejecting the limitations imposed by Dr. Hayes, which are clearly inconsistent with the use of the Grid to determine whether the plaintiff is disabled since the Grid is to be used only when non-exertional

---

[3] This finding in fact is incorrect.  Record at 205.

impairments have only a marginal effect on the occupational base.  *See Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir. 1994).  The question whether limited reaching in all directions and limitation to infrequent overhead work has a more than a marginal effect on the sedentary occupational base is not one that the administrative law judge may safely ignore.  *Saiz v. Barnhart*, 392 F.3d 397, 400 (10th Cir. 2004); Social Security Ruling 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 350.

This case must be remanded, but I will address the plaintiff's remaining argument for the sake of completeness.      The plaintiff contends that the administrative law judge should have found her sleep disorder to be a severe impairment at Step 2 of the sequential process.  Itemized Statement at 8-11.  The plaintiff relies on her statements to physicians to argue that this "condition . . . was not effectively treated from the date of onset, December, 2003, to at least to [sic] the beginning of 2006." *Id*. at 9-10.  She apparently contends that, had this condition been found to be severe, she would have been entitled to benefits for that closed period.  *Id*. at 11.  In order to succeed on this claim she must demonstrate from the existing medical evidence both that the sleep disorder was severe during this period and that it would have caused such extensive physical limitations that she would have been unable to work during the relevant time frame.  The plaintiff argues only that the sleep disorder, if considered together with "the other conditions,"[4] "might well" have caused the administrative law judge to "reach[] a different result," specifically a closed period of disability. *Id*. at 11.  I therefore will consider the sleep disorder, if I find that it should have been considered a severe impairment, only along with the fibromyalgia in this regard.

---

[4] I am aware only of a single "other condition," fibromyalgia, that would be considered together with the sleep disorder for the applicable period.  The plaintiff has not taken issue with the administrative law judge's finding that her other alleged impairments, depression and abdominal pain/gastritis, were not severe.  Record at 18.

The plaintiff, who was represented by counsel at the hearing, Record at 499, did not ask the administrative law judge to consider awarding benefits for a closed period.  In the Eighth Circuit, an administrative law judge is nonetheless required to consider the possibility that an applicant is qualified for a closed period of benefits.  *Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994); *see also Peña v. Barnhart*, 2002 WL 31487903 (W.D.N.Y. Oct. 29, 2002), at *11.  Assuming *arguendo* that the First Circuit would take this view as well, I consider the plaintiff's assessment of the evidence on both necessary parts of her argument.

The plaintiff cites the following pages of the record in support of her contention that the sleep disorder was severe during the relevant period, December 17, 2003 through February 2006: 289, 307, 359, 382, 395, 402, 410, 412, 420 and 424.  Itemized Statement at 9-10.  Those pages do show that her treating physician diagnosed obstructive sleep apnea in February 2006, Record at 402, when she concedes that any severe impairment ended, and on July 29, 2005, *id*. at 412, less than a year before the end of the alleged closed period and only a month after she reported that she

> used to have more difficulty getting to sleep, but says that using amitriptylin has helped. . . . Her nightly routine is to go to bed around 10pm, she goes to sleep easily with her meds., and she says that she usually does not wake during the night unless she is woken.  She gets up around 8-9am feeling rested.

*Id*. at 359.  This report, some six months before the alleged closed period ended, certainly provides support for a conclusion that the plaintiff's sleep apnea had no more than minimal effect on her ability to work at that time.

For the period from December 17, 2003 through June 6, 2005, Record at 359,[5] the only record citations given by the plaintiff are her own report on March 3, 2004 that "she can sleep maybe about

---

[5] *See also* Record at 353: "BiPAP at 15/11 appears to be effective and well tolerated in this patient."

an hour a night," for which her treating physician prescribed amitriptyline, *id*. at 307,[6] her own report on November 16, 2004 that "she doesn't sleep due to physical pain," *id*. at 289, and her report on May 4, 2005 of fatigue during the day, for which her treating physician ordered a sleep study to rule out obstructive sleep apnea, *id*. at 420.  Even if these three entries met the standard of medical evidence, which is required to show the existence of an impairment at Step 2,[7] they only cover the period from March 3, 2004 to May 4, 2005 and there is no evidence that can reasonably be construed to suggest the severity of any sleep disorder during this period.  Thus, assuming that it was error for the administrative law judge to fail to consider whether a sleep disorder was a severe impairment for a closed period, that error was harmless, because the plaintiff has not shown that the sleep disorder was severe at that time, let alone, as she contends, Itemized Statement at 11, that it caused her "severe fatigue" or had any other impact on her ability to perform work-related functions.

### Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 5th day of March, 2008.

---

[6] The treating physician reported on April 13, 2004 that the plaintiff's insomnia had "improved . . . on amitriptyline."  Record at 303.

[7] *But see* 20 C.F.R. §§ 404.1528(a), 416.928(a): "Your statements alone are not enough to establish that there is a physical or mental impairment."

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge